[Civ. No. 44387. Second Dist., Div. Five. Apr. 30, 1975.]

BILL LOEPER FORD, Plaintiff and Appellant, v.
ROBERT HITES, Defendant and Respondent.

**COUNSEL**

Dryden, Harrington & Swartz, Raphael Cotkin and Peter Abrahams for Plaintiff and Appellant.

Cummins, White & Breidenbach and Donald A. Way for Defendant and Respondent.

## OPINION

**STEPHENS, J.**—This is an appeal from an order dismissing plaintiff Bill Loeper Ford's complaint for indemnity against defendant Robert Hites. The complaint alleged that defendant had purchased a 1967 Ford Falcon sedan from plaintiff and that on or about February 2, 1968, the Falcon was involved in an automobile accident. As a result of the accident, two lawsuits were instituted against Loeper Ford and other defendants.[1] The pleadings in these lawsuits indicate that the injured parties, Danelaki and Antonopoulou, were sitting in the rear seat of defendant's automobile when it was struck from the rear by another automobile driven by Barris. From what we can glean from the record of these cases, Hites was driving in the lane next to the "fast lane" on the Ventura Freeway at a speed of approximately 20 miles per hour when his car was struck by the car driven by Barris at a speed of approximately 55 miles per hour. As a result of the impact, the gasoline tank of the Falcon exploded, causing serious injuries to both passengers. They subsequently brought separate suits alleging negligence, breach of warranty, and strict liability in tort against the manufacturer of the Falcon, Ford Motor Company, the dealer who sold the automobile to Hites, Bill Loeper Ford, Henry S. Barris, the driver of the vehicle which struck the Falcon, and other defendants whom we need not be concerned with here.[2] The two lawsuits were consolidated for trial. Prior to trial, Loeper Ford dismissed with prejudice its cross-complaint for indemnity against Ford Motor Company. The jury returned a verdict in favor of both plaintiffs against defendants Barris, Loeper Ford, and Ford Motor Company.[3] Defendants' motions for new trial were denied, and they appealed from the judgment. Two of the defendants, Loeper Ford and Ford Motor Company, settled the case prior to a determination of the appeal. The terms of the settlement called for a stipulated reversal of the judgment against Loeper Ford and Ford Motor Company.

---

[1]The lawsuits were entitled: Ellen Danelaki v. Henry S. Barris et al. (L.A. Superior Court No. NCC 6159-B) and Evangelia Antonopoulou v. Henry S. Barris et al. (L.A. Superior Court No. NCC 6069-B). We take judicial notice of these lawsuits, pursuant to Evidence Code section 452, subdivision (d), and include them in our consideration of the sufficiency of plaintiff's complaint in the present case. (See *Flores* v. *Arroyo*, 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]; *Saltares* v. *Kristovich*, 6 Cal.App.3d 504, 511 [85 Cal.Rptr. 866].)

[2]Hites was not named as a defendant in the suits, presumably because the "guest statute" (former Veh. Code, § 17158) was still in effect at the time. The Supreme Court in *Brown* v. *Merlo*, 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212] subsequently declared the guest statute unconstitutional.

[3]The case went to the jury as to defendants Ford Motor Company and Loeper Ford solely on the issue of strict liability in tort. The jury was instructed on negligence only as to defendant Barris.

Subsequently, Loeper Ford filed a complaint against Hites for indemnity. It alleged that by virtue of the settlement it had entered into, it was obligated to pay the plaintiffs in the prior lawsuits $222,500. It further alleged that the "sole basis of claimants' recovery was that the Falcon had been defectively designed"; that it was a mere "conduit of the vehicle" and its liability was of a "passive, secondary" nature. It also alleged that Hites was actively negligent in the operation of the Falcon and caused it to be involved in the accident. Hites' demurrer to the complaint on the basis that it failed to state facts sufficient for a cause of action was sustained by the trial court. (Code Civ. Proc., § 430.10, subd. (c).) Loeper Ford then filed an amended complaint. The first cause of action for indemnity was identical to the cause of action alleged in the original complaint. The second cause of action alleged an oral agreement whereby Hites "orally agreed" to indemnify Loeper Ford for any liability imposed on it by virtue of its passive liability and Hites' active liability. The third cause of action alleged that Hites "impliedly agreed" that he would indemnify Loeper Ford on the same basis as the previous causes of action. Hites' demurrer to the first and third causes of action was sustained without leave to amend. The demurrer to the second cause of action was also sustained, but the court granted plaintiff leave to amend the amended complaint to set forth the terms of the alleged oral agreement and the consideration therefor. Loeper Ford failed to do so, and Hites moved for dismissal, pursuant to Code of Civil Procedure section 581, subdivision 3.[4] The trial court then dismissed the action, and Loeper Ford (hereinafter, plaintiff) appeals from the order of dismissal.[5]

*Discussion*

The question presented is whether or not the trial court properly dismissed plaintiff's complaint for indemnity. Plaintiff in the instant case is seeking reimbursement from Hites on the basis of the doctrine of implied indemnity for the alleged $222,500 it paid to the plaintiffs in the prior case by virtue of the settlement.

[4]Code of Civil Procedure, section 581 in pertinent part provides: "An action may be dismissed in the following cases: . . . . 3 By the court, when . . . a demurrer is sustained without leave to amend, or when, after a demurrer to the complaint has been sustained with leave to amend, the plaintiff fails to amend it within the time allowed . . . and either party moves for such dismissal." The total thrust of the argument on appeal relates solely to implied indemnity.

[5]It is well settled that a general demurrer admits the truth of all material factual allegations in the complaint (*Flores* v. *Arroyo*, 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]) unless they are contrary to facts of which a court may take judicial notice (*Hauger* v. *Gates*, 42 Cal.2d 752 [269 P.2d 609]).

■ The right to noncontractual implied indemnity rests upon equitable considerations, impelled by a contrast between the secondary, passive role of one tortfeasor and the primary, active role of the other. (*Atchison, T. & S. F. Ry. Co.* v. *Lan Franco,* 267 Cal.App.2d 881, 886-887 [73 Cal.Rptr. 660]; Molinari, *Tort Indemnity in California,* 8 Santa Clara Law. 159, 166.) When applicable, the doctrine permits one of two tortfeasors to shift the entire loss to the other when, without active participation in the wrong on the former's part, he has been compelled by some legal obligation to pay damages occasioned by the active negligence of the latter tortfeasor which was the proximate cause of the loss. (*Muth* v. *Urricelqui,* 251 Cal.App.2d 901, 908-909 [60 Cal.Rptr. 166].) As reiterated by the court in *Ford Motor Co.* v. *Robert J. Poeschl, Inc.,* 21 Cal.App.3d 694, 696-697 [98 Cal.Rptr. 702]: ". . . . 'The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. . . . The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence . . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . . But the important point to be noted in all the cases is that [the] secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.' " (Fn. omitted; citation omitted.)

■ Plaintiff contends that strict liability for selling a defective product was imposed upon it by operation of law solely by reason of its position as a retailer. (*Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168].) It claims that it was a mere conduit of the Ford Falcon and "[a]cting solely as the retailer of the automobile, . . . [its] negligence, if any, in failing to discover the . . . [design] defect would be 'passive negligence,' and as such, would not defeat its right to indemnity." (*Pearson Ford Co.* v. *Ford Motor Co.,* 273 Cal.App.2d 269, 276 [78 Cal.Rptr. 279]; *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.,* 13 Cal.3d 622, 630 [119 Cal.Rptr. 449, 532 P.2d 97].) Therefore, it argues that since its fault, if any, in failing to discover the design defect is "passive," it is entitled to implied indemnification from Hites, whose negligent operation of the vehicle caused the accident. The plaintiff misreads the principle expressed in *Vandermark.* (See also *Hauter* v. *Zogarts,* 14 Cal.3d 104 [120 Cal.Rptr. 681, 534 P.2d 377].)

Plaintiff relies on the decision in *Ford Motor Co.* v. *Robert J. Poeschl, Inc., supra,* 21 Cal.App.3d 694, 697 for support of its position that the doctrine of implied indemnity is applicable in a products liability suit. In *Poeschl,* Ford Motor Company brought suit against a dealer, seeking implied indemnification for a personal injury settlement made by Ford in connection with an accident caused by a defect in an automobile sold by the dealer. Ford had earlier requested the dealer to recall the automobile for servicing. The court held that Ford's production of the defective automobile, coupled with its failure to directly notify the customer of the potential danger, breached a direct obligation it owed to the latter. Thus, it concluded that Ford's fault was primary, not secondary, and not imputed to it solely as a consequence of the dealer's fault. The dealer was held not liable for indemnification.[6] The court noted that "[w]rongs other than negligence may create dual liability to the third party and produce the claim of indemnity. In products liability cases . . . a manufacturer's or retailer's strict liability in tort may form the springboard for the indemnity claim." (*Id.* at pp. 697-698.)

It is necessary to review the tort of strict liability before determining whether or not implied indemnification should be allowed between the retailer (plaintiff) and the driver. In Justice Traynor's concurring opinion in *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 462 [150 P.2d 436], he urged: "[P]ublic policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market. It is evident that the manufacturer can anticipate some hazards and guard against the recurrence of others, as the public cannot . . . . [T]he risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business." Subsequently, in *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], the court held that a manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. Strict liability for defective products was extended to retailers in *Vandermark* v. *Ford Motor Co., supra,* 61 Cal.2d 256, where Justice Traynor again wrote: "Retailers like manufacturers are engaged in the

---

[6]On the other hand, in *Barth* v. *B. F. Goodrich Tire Co.,* 15 Cal.App.3d 137 [92 Cal.Rptr. 809], the court ordered a distributor of defendant's, B. F. Goodrich's, tires to contribute a pro-rata share of a judgment paid by the defendant to the plaintiffs, who were injured when one of defendant's tires it manufactured blew out on a car they were travelling in. The court held that the distributor had actively participated in the wrong which led to the plaintiffs' injuries by not warning of the weight overload danger of the tires it installed.

business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products. (See *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897].) In some cases the retailer may be the only member of that enterprise reasonably available to the injured plaintiff. In other cases the retailer himself may play a substantial part in insuring that the product is safe or may be in a position to exert pressure on the manufacturer to that end; the retailer's strict liability thus serves as an added incentive to safety. Strict liability on the manufacturer and retailer alike affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship."

Since *Vandermark,* strict liability has come to be imposed upon bailors and lessors (*Price v. Shell Oil Co.,* 2 Cal.3d 245, 248 [85 Cal.Rptr. 178, 466 P.2d 722]) and upon wholesalers and distributors (*Barth v. B. F. Goodrich Tire Co.,* 265 Cal.App.2d 228, 252-253 [71 Cal.Rptr. 306]).

In *Cronin v. J.B.E. Olson Corp.,* 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153], the court rejected Restatement of Torts, section 402A, which would have required that a plaintiff prove that the product defect which caused the injury made the product unreasonably dangerous to the user or consumer. The court held it is sufficient if a plaintiff demonstrated that the product contained a defect which caused the plaintiff's injury. The court also held that vehicle manufacturers must take accidents into consideration in designing their products as being reasonably foreseeable occurrences. "The design and manufacture of products should not be carried out in an industrial vacuum but with recognition of the realities of their everyday use." (*Id.* at p. 126.) (*Self v. General Motors Corp.,* 42 Cal.App.3d 1, 7[116 Cal.Rptr. 575].)

In a related case, *Luque v. McLean,* 8 Cal.3d 136 [104 Cal.Rptr. 443, 501 P.2d 1163], the court held that contributory negligence is not a bar to recovery in strict liability actions. Most recently, the court in *Ault v. International Harvester Co.,* 13 Cal.3d 113, 120 [117 Cal.Rptr. 812, 528 P.2d 1148], held that evidence of subsequent remedial measures (Evid. Code, § 1151) which are ordinarily inadmissible in negligence cases are admissible in products cases: "When the context is transformed from a typical negligence setting to the modern products liability field, however, the 'public policy' assumptions justifying this evidentiary rule are no longer valid. The contemporary corporate mass producer of goods, the

normal products liability defendant, manufactures tens of thousands of units of goods; it is manifestly unrealistic to suggest that such a producer will forego making improvements in its product, and risk innumerable additional lawsuits and the attendant adverse effect upon its public image, simply because evidence of adoption of such improvement may be admitted in an action founded on strict liability for recovery of an injury that preceded the improvement. In the products liability area, the exclusionary rule of section 1151 does not affect the primary conduct of the mass producer of goods, but serves merely as a shield against potential liability. In short, the purpose of section 1151 is not applicable to a strict liability case and hence its exclusionary rule should not be gratuitously extended to that field."

With respect to indemnity agreements, the Supreme Court in *Price* v. *Shell Oil Co., supra,* 2 Cal.3d 245, extended strict liability to a lessor of a defective product and stated (at p. 258): "No language of such essential specificity indicates that the lessee is to be held responsible for the negligent acts of the lessor, much less for the strict liability in tort imposed upon the lessor for placing on the market a defective article. Indeed *it would do violence to the doctrine of strict liability and thwart its basic purpose, if we were to interpret so general a clause as transferring the liability for a defective article from the party putting the article in the stream of commerce, to the user or consumer of the article who is within the class the doctrine was designed to protect."* (Fn. omitted; italics added.)

Subsequently, this court in *Dart Transportation Service* v. *Mack Trucks, Inc.,* 9 Cal.App.3d 837, 848 [88 Cal.Rptr. 670] similarly refused to allow a lessor (Mack) to obtain indemnity pursuant to an indemnity agreement from the lessee (Dart). We stated that "the language of the indemnification agreement, coupled with the circumstances under which it was executed did not create, and was never intended to create, an obligation on the part of Dart, a consumer of the article who is within the class the doctrine of strict liability is designed to protect, to indemnify Mack for damages . . . resulting from defects in the manufacture of the leased vehicles."

We see that in the development of strict liability it has now been determined that a plaintiff can still recover even though he may have been contributorily negligent in using the product. (*Luque* v. *McLean, supra.*) Plaintiff here is seeking to interject the concept of fault in an indemnification case between a retailer and the driver of a defective automobile. The Supreme Court has repeatedly indicated that a retailer

is strictly liable, regardless of fault. To allow indemnification because Hites was actively negligent in driving the automobile is the antithesis of strict liability. Plaintiff attempts to shift the liability for selling a defective automobile to the driver simply because he used the automobile in such a way as to expose the design defect. The present status of strict liability prohibits this avoidance of accountability. The court in *Cronin, supra,* held that a manufacturer must take the occurrence of an accident (i.e., the negligence of a driver) into consideration in designing the vehicle.

Accordingly, we conclude that as between the retailer and the driver, there is no right to implied indemnification. *Poeschl, supra,* is not contrary to this holding. That case only dealt with the right of indemnification as between the manufacturer and retailer.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.