[Civ. No. 29074. Fourth Dist., Div. Three. May 17, 1985.]

HERBERT W. JAHN, Plaintiff and Appellant, v.
DONALD BRICKEY et al., Defendants and Appellants.

**COUNSEL**

Bernard F. Klein for Defendants and Appellants.

Stodd & Barnett and John P. Stodd for Plaintiff and Appellant.

**OPINION**

**CROSBY, J.**—In this action by a seller of real property against a real estate agent and broker, we are asked to decide (1) whether, under Code of Civil Procedure section 473, a party may disavow and later amend responses to a request for admissions (Code Civ. Proc., § 2033); (2) if a plaintiff may be permitted to elect between equitable and legal remedies after the jury has returned a verdict; (3) whether damages for emotional distress are recoverable in addition to equitable relief; and (4) whether it was proper to allow amendment of the complaint to conform to proof after verdict. Two additional issues are presented by cross-appeal: whether the court properly reduced a punitive damage award from $250,000 to $100,000 and correctly refused to award attorneys fees as costs pursuant to Civil Code section 3333.

I

Herbert W. Jahn listed seven Garden Grove apartment houses with real estate agent Donald Brickey and his broker, Walker & Lee, Inc., in 1976. Brickey decided to purchase one of them himself, and an escrow was opened for that purpose. In 1977 Jahn filed a multicount complaint, claiming Brickey and Walker & Lee breached a fiduciary duty by causing the escrow to close contrary to his instructions. The complaint alleged Brickey contracted to purchase the property for $89,000, but did not perform on or before January 10, 1977, as agreed. Jahn then instructed Brickey to cancel the escrow. A week or so later, after further negotiations, Jahn raised the price to $107,500, provided Brickey accepted the same day. Three days later Brickey did accept but Jahn rejected the acceptance as untimely. Jahn again instructed Brickey and Walker & Lee to cancel the escrow on February 2, 1977, according to the complaint. Nevertheless, Brickey caused the escrow

to close at the original $89,000 price and on February 5, 1977, presented Jahn with a check for $33,901 and a promissory note.

The first cause of action in the original complaint against Brickey and Walker & Lee sought rescission and restitution of the property, damages for emotional and mental distress, punitive damages, damages for loss of use or, in the alternative, consequential damages for lost profits "in excess of $25,000," and attorneys fees. A second cause of action sought return of the broker's commission on the sale, damages for mental distress, and punitive damages. The third cause of action was for quiet title, and the fourth sought cancellation of the deed based on fraud. Walker & Lee cross-complained against Brickey for indemnity.[1]

## II

In 1979 Walker & Lee sent Jahn requests for admissions concerning certain documents copied from the escrow file (Code Civ. Proc., § 2033). Jahn served verified responses in which he admitted the validity of his signature on each.

The first trial commenced in 1981 and, after the pertinent documents covered in the earlier admissions were received in evidence, Jahn's counsel asked Brickey whether he could imitate Jahn's signature. An objection was sustained, but out of the presence of the jury Jahn's counsel moved under Code of Civil Procedure section 473 to amend the responses to several requests for admissions. The court denied the motion but then indicated Jahn would be allowed to rebut the admissions and offer conflicting evidence. The court cautioned, "But he is going to have to be in a position of explaining why he waited two years to do it." Brickey's motion for a mistrial based on surprise was granted.

Jahn brought another section 473 proceeding in the law and motion department seeking leave to amend five responses in which he admitted one attached document was "a true and correct copy of the Grant Deed signed by plaintiff" and the signatures on two other appended documents were his. The latter two documents were amendments to escrow instructions. The first was dated May 25, 1976 and provided, "Seller [Jahn] is aware that buyer [Brickey] is a licensed real estate agent associate with Walker & Lee Inc. acting as a principle [sic] inthis [sic] escrow." The second was dated January 18, 1977 and provided the escrow holder was "authorized and instructed to correct grant deed [to reflect Brickey would take title as 'A

---

[1]Brickey stipulated to the entry of judgment in favor of Walker & Lee on the cross-complaint. Walker & Lee dismissed its appeal of the judgment in favor of Jahn.

Married Man, as his sole and separate property'] even though said deed has previously been signed and notarized." As to this latter document, Jahn's admission was qualified: He specifically denied signing the document after January 10, 1977. The grant deed referred to in the first proposed amended response was the one subsequently altered pursuant to the January 18, 1977 escrow amendment.

Jahn and his counsel filed declarations explaining that during the period this escrow was pending, Brickey handled seven other escrows on his behalf; and Jahn was accustomed to signing large numbers of documents brought to him by Brickey who was in charge of all the paperwork. As to the two documents attached to the requests for admissions and purportedly signed by Jahn, he explained, "Several of the questions . . . asked me to admit that the copies attached were what I had signed. . . . I looked at the signatures on the documents and from what I could see they looked like my writing. At that time the thought never entered my mind that my former church friend, Don Brickey, or anyone else would have forged my signature. Consequently, I answered the requests for admissions as I did."

Both declarations went on to explain Jahn was finally alerted to the truth that his signature had been forged when Brickey testified at trial that Jahn had signed an amendment to the escrow on January 18, 1977. This allegation was inconsistent with Brickey's deposition testimony; and Jahn was convinced he signed no documents relating to this escrow after January 10, 1977, as he had indeed stated in the original combined request for admissions and interrogatories. Only then did Jahn retain a questioned documents examiner who determined he had not signed the two amendments to escrow instructions. Jahn's motion concluded, "Leave to amend plaintiff's Answers to defendant's requests for admission is sought at this time to prevent defendant Brickey from again claiming surprise over plaintiff's proof of forgery at trial (even though Brickey is the one Person who *had* to know of the forgery). The amendment is also sought to prevent defendants from again attempting at trial to prevent the truth of forgery from being proved on the ground of plaintiff's prior answers to requests for admissions. A defendant who by fraud and deceit deceives a plaintiff into believing that a document was or may have been signed by plaintiff should not be rewarded by preventing the plaintiff from showing the truth when he later discovers it."

Walker & Lee filed a voluminous response raising every possible legal impediment to the amendment. It complained, for example, Jahn's Code of Civil Procedure section 473 motion had already been once denied, while admitting in another portion of the brief that the mistrial was declared in part "to expressly allow plaintiff to attempt to obtain the relief he now seeks

. . . ." It added that while Jahn's points and authorities relied on many cases allowing liberal amendments to pleadings, no case involving amendments to responses to requests for admissions was cited.

Brickey's counsel filed a conclusory and somewhat hysterical declaration in opposition to the motion complaining of the passage of time and severe prejudice—without explaining what it might have been, other than the potential revelation of an unpleasant truth, perhaps. He claimed, "Had I known as late as two (2) years ago that plaintiff was taking the position that he had not signed said documents, I would have taken an entirely different stance in connection with this lawsuit. To permit an amendment at this late date would obviate the purposes of requests for admissions and of discovery."

■ Despite the lengthy recitation of facts, the issue is easily resolved: A party is entitled to amend responses to requests for admissions pursuant to Code of Civil Procedure section 473 "where justice so requires." (*Schultz* v. *Mutch* (1985) 165 Cal.App.3d 66, 79 [211 Cal.Rptr. 445]; *Guzman* v. *General Motors Corp.* (1984) 154 Cal.App.3d 438, 444, fn. 5 [201 Cal.Rptr. 246]; see also *Cohen* v. *Superior Court* (1976) 63 Cal.App.3d 184, 187 [133 Cal.Rptr. 575].) As we will explain, an amendment should be allowed in the court's sound discretion where good cause is shown and outweighs any prejudice to other litigants in the action.

In *Guzman,* we determined a party responding to interrogatories was not even required to obtain leave of court in order to amend answers to interrogatories. This result was based on the principle that interrogatories are "discovery device[s]" (*International Harvester Co.* v. *Superior Court* (1969) 273 Cal.App.2d 652, 655 [78 Cal.Rptr. 515]) and answers to interrogatories " 'will not prevent the defendant at the trial from relying on subsequently discovered facts, including facts produced at the trial by plaintiff or his witnesses, or by any of the other parties to this lawsuit, or their witnesses. In fact, such answers would not even prevent production of facts now known to defendant but not included in the answers, upon a proper showing that the oversight was in *good faith.*' [Citation.]" (*Guzman* v. *General Motors Corp., supra,* 154 Cal.App.3d at p. 443.) ■ Admissions are more than a mere discovery device. They also serve a function similar to the pleadings in a lawsuit in that they are "aimed primarily at setting at rest a triable issue so it will not have to be tried." (*International Harvester Co.* v. *Superior Court, supra,* 273 Cal.App.2d at p. 655.) Thus, a responding party must obtain leave of the court before amending admissions made under Code of Civil Procedure section 2033.

As counsel for Brickey aptly notes, a failure to comply with the requisites of Code of Civil Procedure section 2033 can lead to harsh results (e.g.,

*Barnett* v. *American-Cal Medical Services* (1984) 156 Cal.App.3d 260 [202 Cal.Rptr. 735]). But we see no reason to make the statute even harsher by imposing a higher standard for amendments of responses to a request for admissions than for amendments of verified pleadings: "It is a general rule that an amendment which contradicts an admission in the original pleading will ordinarily not be allowed unless a showing is made of mistake or other excuse for changing the allegations of fact [citations]." (*Roemer* v. *Retail Credit Co.* (1975) 44 Cal.App.3d 926, 939 [119 Cal.Rptr. 82].) ■ Here, Jahn demonstrated good cause for the amendments, and Brickey failed to show legally cognizable prejudice. We find no abuse of discretion in permitting the amendments to the admissions.

Finally, we find Brickey's ardor in urging error on this point to be particularly disingenuous: He virtually concedes Jahn's initial admissions of the genuineness of his signatures on the disputed documents were erroneous, but argues Jahn should nevertheless be bound because Jahn intended his initial responses to be admissions and "[t]here must be rules and regulations under which issues are determined and admissions become binding and final. . . . [¶] [Jahn] apparently believed he had a legitimate lawsuit based upon [the genuineness of his signature]. The case should be retried on that basis." We cannot agree.

We prefer a rule which allows the trial court sufficient flexibility and discretion to correct innocent mistakes in the interest of justice. Similarly, where statutorily permissible, the policy of resolving cases on the merits compels the rejection of a rigidity which would permit one party to take advantage of another's mistakes without consideration of the equities of the situation. Our decision in *Barnett* v. *American-Cal Medical Services, supra,* 156 Cal.App.3d 260 was statutorily compelled. The result advocated by Brickey is not.

We also note repudiated admissions may still be used ordinarily for impeachment in the same manner as a changed response to an interrogatory or deposition question. And section 473 allows the court to impose conditions on its order granting relief, e.g., reimbursement of expenses incurred by the opposing party as a result of the amendment. Moreover, if the propounding party prevails on the disputed issue at trial and the court determines there were insufficient grounds for amendments to permit the responding party to deny the matters, the law provides a remedy. (Code Civ. Proc., § 2034, subd. (c); *Smith* v. *Circle P Ranch Co.* (1978) 87 Cal.App.3d 267, 273-276 [150 Cal.Rptr. 828]; *Chodos* v. *Superior Court* (1963) 215 Cal.App.2d 318, 324 [30 Cal.Rptr. 303].)

## III

Brickey next complains Jahn was required to make an election of remedies before the case was submitted to the jury. Once the court determined rescission was appropriate, Brickey argues, it was necessary for Jahn to choose his remedy because "[t]he remedies of rescission, being based upon a disaffirmance of an agreement, and damages, being based upon an affirmance, are classicly [*sic*] inconsistent." He is wrong.

 Civil Code section 1692 provides in part, "A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery." Here, Jahn accepted rescission of the transaction and was required to credit all sums received from Brickey against the judgment. But simply cancelling the sale could not make Jahn "whole." There was also the issue of consequential damages; and this was a question for the jury, not the court. Thus, the jury determined Jahn would have received $75,000 in rents and profits during the period Brickey retained ownership of the property and awarded this sum as consequential damages. Similarly, the commission received by Brickey and Walker & Lee was another expense out of Jahn's pocket for which restitution was proper.

The jury also determined Jahn sustained a loss of $26,000 as a result of Brickey's closing escrow on the property. Since Jahn elected rescission, this "duplicate" item of recovery was stricken. (Civ. Code, § 1692.) Brickey was given credit for sums paid to Jahn out of the rescinded escrow. Moreover, Brickey would have been permitted to offset his lost interest on the down payment had he raised the issue.

## IV

Brickey also contends damages for emotional distress are not recoverable in an action for rescission. He forgets, however, that rescission was only one of several causes of action and Jahn also prevailed on the *tort* theories of fraud and breach of fiduciary relationship. The Supreme Court long ago determined "that a plaintiff who as a result of a defendant's tortious conduct loses his property and suffers mental distress may recover not only for the pecuniary loss but also for his mental distress." (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 433-434 [58 Cal.Rptr. 13, 426 P.2d 173].)

This principle was subsequently applied in *Quezada* v. *Hart* (1977) 67 Cal.App.3d 754 [136 Cal.Rptr. 815], where the Court of Appeal observed,

"Damages for emotional suffering [under Civil Code section 3333] are allowed when the tortfeasor's conduct, although negligent as a matter of law, contains elements of intentional malfeasance or bad faith." (*Id.*, at p. 761.) *Quezada* noted the cases permitting recovery for emotional distress "all . . . contain[ed] some element of intentional or affirmative wrongdoing by defendant." (*Id.*, at p. 762.) The court identified the "more significant recent cases [as] *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470] [$200,000 verdict for emotional suffering by four plaintiffs as a result of title company's tortious breach of implied covenant of good faith and fair dealing in negligently issuing title report and later intentionally refusing to clear title]; . . . *Kendall Yacht Corp.* v. *United California Bank* (1975) 50 Cal.App.3d 949 [123 Cal.Rptr. 848] [wrongful dishonor of a check causing emotional distress damages]; and *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844 [88 Cal.Rptr. 39] [negligent breach of bailor/bailee relationship in failing to return rings of known sentimental value thereby causing emotional suffering] . . . ." (*Id.*, at pp. 761-762.) In our view, the facts here are at least as egregious as the facts in the cases cited in *Quezada*. The jury clearly found Brickey intentionally wronged Jahn and even awarded punitive damages. Damages for emotional distress were available under these circumstances. As Brickey does not challenge the sufficiency of the evidence to support the award, we have nothing further to review.

V

Finally, Brickey argues Jahn improperly amended the complaint to conform to proof *after* judgment was entered. The proper procedure, Brickey argues, was to first set aside the judgment and then grant Jahn leave to amend the complaint. But the court did precisely that. Judgment was originally entered on March 5, 1982. An array of posttrial motions was heard on April 16. The minutes for that date indicate the court *vacated* the existing judgment and granted Jahn's motion to amend the complaint to conform to proof by interlineation to substitute figures in the prayer for damages. The judgment was subsequently entered on May 14, 1982. There was no error.

VI

We next consider the issues raised by Jahn in his cross-appeal. He first complains the court abused its discretion in denying Brickey's motion for a new trial on the condition he accept a reduction in the punitive damages award from $250,000 to $100,000. The sole basis for this complaint, however, is "that the trial judge should not, without good reason, invade the province of the jury which has the primary duty" to determine the amount of punitive damages. Jahn summarily concludes, "the Court erred

in substituting his own opinion for that of the jury." But that is what Code of Civil Procedure section 662.5, subdivision (b) authorizes: "If the ground for granting a new trial is excessive damages, [the trial court may in its discretion] make its order granting the new trial subject to the condition that the motion [be] denied if the party in whose favor the verdict has been rendered consents to a reduction of so much thereof *as the court in its independent judgment* determines from the evidence to be fair and reasonable." (Italics added.) On appeal from a conditional order granting a new trial, however, the reviewing court may reverse "only if there is no substantial basis in the record for any of" the reasons articulated by the trial court. (Code Civ. Proc., § 657.)

Here, the court exercised its independent judgment and determined an award of $250,000 in punitive damages was excessive because Jahn did recover title to and possession of the property and uncontradicted evidence fixed Brickey's net worth at $550,000. We find there is "substantial basis in the record" to support the decision.

## VII

In his memorandum of costs, Jahn sought to recover $61,526 in attorneys fees and expenses pursuant to Civil Code section 3333. That section provides, "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." The Court of Appeal in *Walters* v. *Marler* (1978) 83 Cal.App.3d 1 [147 Cal.Rptr. 655] agreed section 3333 included the successful plaintiff's attorneys fees and awarded them against the fiduciary sued for fraud. But that portion of the *Walters* opinion was specifically disapproved by the Supreme Court in *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 507 [198 Cal.Rptr. 551, 674 P.2d 253], an opinion rendered several months before Jahn's brief was filed with this court. There, the court observed, "[I]n *Walters* and the present case, a real estate broker was found guilty of fraud. . . . [¶] The opinion in *Walters* expresses no rationale for creating an exception to the general American rule regarding the award of attorney fees. . . . The fact that the wrongdoing was committed by a fiduciary does not provide a sufficient reason for the exception; surely, if the award of attorney fees depended on the nature of the wrong, fees in tort actions would be awarded on a case-by-case basis, a result clearly prohibited by [Code of Civil Procedure] section 1021." (*Id.,* at pp. 506-507; see also *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 818, fn. 4 [210 Cal.Rptr. 211, 693 P.2d 796].) *Gray* forecloses the issue; there was no error.

The judgment is affirmed in all respects. Respondent is entitled to costs on the appeal. Each party shall bear his own costs on the cross-appeal.

Trotter, P. J., and Wallin, J., concurred.