953 F.2d 1387
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Reza HOSSEINI, Plaintiff-Appellee,
v.
Mohammad Akram CHOWDRY, Defendant-Appellant.
Reza HOSSEINI, Plaintiff-Appellant,
v.
Mohammad Akram CHOWDRY, and the Saar Foundation, Inc., a
Virginia corporation, Defendant-Appellee.
 Nos. 90-16058, 90-16287.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 9, 1991.
Decided Jan. 31, 1992.
 
 1
 Before WILLIAM A. NORRIS and DAVID R. THOMPSON, Circuit Judges, and EZRA, District Judge.*
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 Reza Hosseini sued Mohammad Akram Chowdry for breach of contract and fraud. A jury returned a verdict in favor of Hosseini for $3,310 on the contract claim, $79,440 on the fraud claim, and awarded $165,500 in punitive damages. The district court denied Hosseini's request for prejudgment interest. Judgment was entered accordingly.
 
 
 4
 Chowdry appeals from the judgment on the jury verdict. Hosseini cross-appeals from the district court's denial of prejudgment interest. We affirm the judgment against Chowdry, reverse the denial of prejudgment interest, and remand to the district court for calculation of prejudgment interest on the fraud and contract damage awards.
 
 FACTS
 
 5
 Chowdry and Hosseini served as members of the board of directors of Prime Circuit Technology (PCT), a closely held California corporation; Chowdry was PCT's president. Hosseini agreed to sell 165,500.22 shares of his PCT stock to Chowdry for $1.50 per share, subject to restrictions under PCT's bylaws.
 
 
 6
 The bylaws gave the corporation the right to redeem the shares and other PCT shareholders the right of first refusal proportionate to their interest in the company. After Hosseini and Chowdry signed the stock purchase agreement, another PCT shareholder, Sheikh Abdulaziz Bin Ibrahim Al-Ibrahim, expressed interest in exercising his right of first refusal. The court found that Al-Ibrahim was entitled to purchase 96% of Hosseini's shares.
 
 
 7
 Hosseini claimed, and the jury necessarily found, that Chowdry defrauded Hosseini into rescinding the stock purchase agreement. Approximately two months after this fraudulently induced rescission, Hosseini sold all his PCT stock to Al-Ibrahim for $1.00 per share, 50 cents per share less than under the original contract.
 
 
 8
 The district court held that under the breach of contract claim, Chowdry could be liable for damages attributable only to 4% of Hosseini's PCT stock. The district court also instructed the jury that it could award appropriate consequential damages for the fraudulently induced rescission.
 
 
 9
 The jury awarded Hosseini $3,310 in damages on the contract claim (4% of the stock at a loss of 50 cents per share) and $79,440 in consequential damages on the fraud claim (96% of the stock at a loss of 50 cents per share). The jury also awarded $165,500 in punitive damages, which when added to the contract and fraud damages, equaled $248,250, the amount Hosseini would have received for the sale of all of his shares at the $1.50 per share price.
 
 DISCUSSION
 
 10
 A. Award of Damages for Both Breach of Contract and Fraud
 
 
 11
 Chowdry argues that the district court incorrectly instructed the jury regarding the award of damages for breach of contract and fraud under California law.
 
 
 12
 A district court's interpretation of state law is reviewed under the same independent de novo standard as are questions of federal law. In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). California law requires a plaintiff to elect either to enforce a fraudulently induced contract or to rescind it. Yeng Sue Chow v. Levi Strauss & Co., 49 Cal.App.3d 315, 326 (1975). According to Chowdry, the jury could not both award Hosseini damages for breach of contract (thereby enforcing the contract) and award him compensatory damages for fraudulently inducing rescission (thereby rescinding the contract).
 
 
 13
 Chowdry's argument misses the mark. Chowdry and Hosseini entered into two contracts: the contract for the sale of Hosseini's 165,500.22 shares and the contract to rescind that sale. Hosseini did not seek to enforce and rescind the same contract. Rather, he sought to enforce his contract for the sale of his shares and he sought to rescind his agreement with Chowdry to cancel that contract.
 
 
 14
 Hosseini's contract claim was limited by the court to cover only the 4% of the shares Chowdry would have been able to buy. Hosseini mitigated his damages for these shares by selling them to Al-Ibrahim for $1.00 per share. Hosseini's fraud action covered the remaining 96% of the stock which he sold to Al-Ibrahim for $1.00 per share, but which he could have sold to Al-Ibrahim for $1.50 per share but for Chowdry's fraudulently induced rescission.
 
 
 15
 In his fraud action, Hosseini is entitled to recover consequential damages so long as these damages are not inconsistent or duplicative of the recovery of other damages. Cal.Civ.Code § 1692. See also Arthur L. Sachs, Inc. v. City of Oceanside, 151 Cal.App.3d 315, 322 (1984); Star Pac. Inv. v. Oro Hills Ranch, 121 Cal.App.3d 447, 461 (1981). Although Chowdry fails to discuss section 1692, the thrust of his argument is that Hosseini's recovery of damages for breach of contract and for fraud is inconsistent or duplicative. We reject this argument.
 
 
 16
 In Jahn v. Brickey, 168 Cal.App.3d 399, 406 (1985), the court allowed the plaintiff both to rescind a real estate contract and to recover consequential damages awarded by the jury. "[S]imply canceling the sale could not make [the plaintiff] 'whole.' " Id. The same can be said in Hosseini's case. Simply canceling the rescission agreement and allowing Hosseini to enforce his contract against Chowdry to the extent of 4% of his stock would not make Hosseini "whole." The agreement to rescind the sales contract, which Chowdry procured by fraud, cost Hosseini the sales proceeds for 100% of his stock at $1.50 per share. The amounts awarded by the jury on Hosseini's breach of contract and fraud claims were not inconsistent or duplicative.
 
 B. The Verdict Form
 
 17
 Chowdry also argues that the district court erred by using a verdict form which "virtually compelled" the jury to award damages for fraud in addition to contract damages. Chowdry failed to object to the verdict form in the district court. We generally do not consider an issue raised for the first time on appeal unless it falls into one three narrow exceptions:
 
 
 18
 (1) there are "exceptional circumstances" why the issue was not raised in the trial court, (2) the new issue arises while the appeal is pending because of a change in the law, or (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court.
 
 
 19
 United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir.1990).
 
 
 20
 Chowdry does not address his failure to raise the issue in the district court, and none of the exceptions appears applicable here. Nevertheless, on the merits we reject the suggestion that the verdict form was improper. Fed.R.Civ.P. 49(a) "grants wide discretion on the use of special verdicts to the trial court; the court may use whatever form of verdict 'it deems most appropriate.' " Landes Constr. Co. v. Royal Bank, 833 F.2d 1365, 1374 (9th Cir.1987) (quoting Rule 49(a)). Here, the district court did not abuse this discretion in its choice of the verdict form. See Landes, 833 F.2d at 1374 (decision whether or not to use a special verdict is reviewed for abuse of discretion).
 
 C. Jury Instructions
 
 21
 Chowdry argues that the district court erred in failing to give proposed jury instruction 1003. Jury instructions are considered as a whole to determine if they are misleading or inadequate. United States v. Beltran-Rios, 878 F.2d 1208, 1214 (9th Cir.1989).
 
 
 22
 Jury instruction 1003 included a number of statements of undisputed facts as determined by the district court in ruling on Chowdry's earlier motion for summary judgment. The instruction included three statements concerning Chowdry's lack of delay in notifying PCT shareholders of their right to buy Hosseini's stock. Chowdry claimed that the delay theory was a "crucial linchpin" in the case.
 
 
 23
 The court originally agreed to give a modified version of instruction 1003, but it failed to do so. Chowdry's counsel, however, did not notice the omission of the instruction until after the judge read the instructions to the jury.
 
 
 24
 The district court first ruled that Chowdry's belated objection was not timely. Subsequently, the court decided (in dismissing Chowdry's motion for a JNOV or new trial) that the instruction was properly omitted because it contained information irrelevant to the law to be applied by the jury.
 
 
 25
 We agree with the district court's subsequent decision. Even if Chowdry's objection was timely, the jury instructions viewed as a whole are balanced and enabled the jury to consider fully all the evidence presented by both sides.
 
 
 26
 D. Exclusion of Evidence of Hosseini's Alleged Illegal Activities
 
 
 27
 Chowdry sought to introduce evidence at trial showing that Hosseini needed money to smuggle his brother into the United States illegally through Mexico and that Hosseini worked to further the aims of Iranian terrorism. Chowdry claimed that this evidence would impeach Hosseini and would explain Chowdry's reluctance to give Hosseini money which Chowdry knew would "be used to violate federal law." The district court granted Hosseini's motion in limine to exclude this evidence.
 
 
 28
 Evidentiary rulings are reviewed for an abuse of discretion and will not be reversed absent prejudice. Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988); Coursen v. A.H. Robins Co., 764 F.2d 1329, 1335 (9th Cir.1985), amended 773 F.2d 1049 (9th Cir.1985) (exclusion or omission of evidence under Fed.R.Evid. 403 is reviewed for an abuse of discretion).
 
 
 29
 The district court found that the excluded evidence was irrelevant. Further, it found that any minimal relevance of Hosseini's brother's attempt to immigrate to this country or Hosseini's own trip to Mexico was far outweighed by the potential prejudice from reference to the Hosseini's asserted illegal or terrorist activities.
 
 
 30
 In Coursen, we held that a district court did not abuse its discretion under Fed.R.Evid. 403 in barring evidence of the appellee's fraud in reporting pregnancy rates. Coursen, 764 F.2d at 1335. Like the district court in Coursen, the district court here did not abuse its discretion in concluding that "prejudice and confusion would be generated by innuendoes of collateral misconduct." Id.; Fed.R.Evid. 403.
 
 E. Denial of Motion for JNOV or New Trial
 
 31
 Chowdry's JNOV motion and his motion for a new trial raised four issues: (1) the exclusion of evidence relating to Hosseini's alleged illegal activities, (2) the failure to instruct the jury regarding delay, (3) allowing the jury to award damages for both breach of contract and fraud, and (4) excessive and improper damages.
 
 
 32
 We have already rejected Chowdry's first three contentions. We now consider Chowdry's arguments as to damages.
 
 
 33
 Chowdry argues that the amount of damages was excessive and that the jury improperly awarded punitive damages without evidence of his financial condition.
 
 
 34
 The jury unanimously awarded contract damages, fraud damages and punitive damages. The amount of these damages is supported by Hosseini's testimony and by documentary evidence in the case. The district court found that the damage award, "while high, is not unconscionable in light of the evidence." We agree, and hold that the district court did not err in denying Chowdry's new trial and JNOV motions. See Seymour, 809 F.2d at 1387 (district court did not abuse its discretion in failing to grant a new trial based on excessive damages); Landes, 833 F.2d at 1370-71 (JNOV motion must be denied if there is substantial evidence to support the verdict).
 
 
 35
 Chowdry argues that the jury decided on the amount of punitive damages "without a scintilla of evidence" regarding Chowdry's financial condition. We reject this argument.
 
 
 36
 Chowdry admits the jury was told that the value of his Mylex stock was $529,000. The jury also had before it Exhibit 20, which was Chowdry's investor representation statement for his purchase of Mylex stock. This statement indicated that Chowdry's income in 1984 and 1985 was between $50,000 and $75,000, that his estimated 1986 income was between $75,000 and $100,000, that he had assets of over $150,000 in the United States alone, and more outside the country, and that the Mylex stock, worth $529,000 at the time of trial, was purchased for $10,000. The jury had ample evidence to award punitive damages under California law. Cf. Adams v. Murakami, 813 P.2d 1348 (1991).
 
 
 37
 F. Hosseini's Cross Appeal for Prejudgment Interest
 
 
 38
 State law governs the award of interest in diversity cases. Landsberg v. Scrabble Crossword Game Players, Inc., 802 F.2d 1193, 1200 (9th Cir.1986). Under California law, the right to prejudgment interest is not discretionary; it must be granted "as a matter of right if damages are 'certain, or capable of being made certain by calculation.' " Levy-Zentner Co. v. Southern Pac. Transp. Co., 74 Cal.App.3d 762, 798 (1977) (footnote omitted); Cal.Civ.Code § 3287(a).[1]
 
 
 39
 On December 11, 1986, Hosseini's counsel sent a letter to Chowdry demanding compensation of $82,750. This figure represented 50 cents per share for the 165,500 shares Chowdry originally agreed to buy from Hosseini. It totals exactly the amount the jury awarded on the aggregate amount of the contract and fraud claims when Chowdry's liability was established at trial. These damages were "capable of being made certain" within the meaning of Cal.Civ.Code § 3287(a) and this is what the jury did. Prejudgment interest, therefore, is recoverable by Hosseini. In computing the amount of this interest, the district court should calculate it from the date of Hosseini's demand letter to Chowdry, December 11, 1986. See Credit Managers' Ass'n v. Brubaker, 233 Cal.App.3d 1587, 1595 (1991).
 
 CONCLUSION
 
 40
 The district court's judgment in favor of Hosseini is affirmed. The district court's denial of prejudgment interest is reversed. This case is remanded to the district court for a computation of prejudgment interest.
 
 
 41
 AFFIRMED in part, REVERSED in part and REMANDED.
 
 
 
 *
 The Honorable David A. Ezra, United States District Court Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Cal.Civ.Code § 3287(a) provides in pertinent part:
 Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.