[Civ. Nos. 34540, 34541. First Dist., Div. Two. Mar. 5, 1975.]

ALETHA MARILEE TAGGART, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Robert C. Dunn, Alan R. Johnson and Michael F. Malloy for Plaintiff and Appellant.

Harry S. Fenton, John P. Horgan, Robert J. DeFea, Kenneth G. Nellis, John F. Donovan and Donald J. Sullivan for Defendant and Respondent.

**OPINION**

**ROUSE, J.**—According to the complaints in the two separate actions which have been consolidated for purposes of this appeal, an automobile driven by the plaintiff Aletha Marilee Taggart collided with that driven by Dolores Eileen Laferriere and occupied by her five children. Apparently, the accident occurred when the plaintiff's westbound automobile pulled from United States Highway 199 into its intersection with United States Highway 101. As a result of the accident, Mrs. Laferriere was killed and her children injured. Separate actions for

wrongful death and personal injuries were brought against the plaintiff herein. Miss Taggart in turn filed claims with the defendant State of California and, following their denial, instituted separate actions for implied indemnity, alleging the state's negligence in maintaining the highways. Demurrers were sustained by the trial court with leave to amend. After the expiration of plaintiff's period in which to amend, orders of dismissal were made and judgments entered. Plaintiff has appealed from the judgments.[1]

This appeal is remarkably similar to that considered in *General Electric Co.* v. *State of Cal.* ex rel. *Dept. Pub. Wks.* (1973) 32 Cal.App.3d 918 [108 Cal.Rptr. 543]. In that case there was a rear-end collision between two automobiles which propelled the struck automobile over a center divider and into oncoming traffic. The defendants filed cross-complaints in the three separate actions which arose from that accident, seeking relief against the State of California on a theory of implied indemnity. Each cross-complaint alleged that the state had negligently maintained the highway. The trial court there sustained general demurrers without leave to amend.

Responding to the cross-complainants' contention that they were entitled to "equitable implied non-contractual indemnity," the appellate court set forth the following considerations which we adopt: "This theory was extensively discussed in *Atchison, T. & S. F. Ry. Co.* v. *Lan Franco,* 267 Cal.App.2d 881, 886-887 [73 Cal.Rptr. 660]. There the court stated: 'The cases are not always helpful in determining whether equitable indemnity lies. The tests utilized in applying the doctrine are vague. Some authorities characterize the negligence of the indemnitor as "active," "primary," or "positive," and the negligence of the indemnitee as "passive," "secondary," or "negative." . . . Other authorities indicate that the application of the doctrine depends on whether the claimant's liability is "primary," "secondary," "constructive," or "derivative." . . . These formalizations have been criticized as being artificial and as lacking the objective criteria desirable for predictability in the law. . . .

■ " 'Notwithstanding the uncertainty generated by the foregoing terminology, two critical prerequisites are generally necessary for the invocation of noncontractual implied indemnity in California: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured party; and (2) it must

---

[1]Plaintiff also purports to appeal from the orders of dismissal, which orders are nonappealable.

appear that the claimant *did not actively nor affirmatively participate* in the wrong.'

"The foregoing rule that one seeking equitable indemnity from his joint tortfeasor must not have *actively* or *affirmatively* participated in the wrong, has been widely followed in California. [Citations.]" (P. 922.)

The court noted that, applying the above rule to the facts of that case, it must be held that the rear-ending of the plaintiff's automobile constituted active and affirmative participation in the wrong. While we cannot go so far as to state that the plaintiff here-in actively or affirmatively participated in a wrong, since it has not been shown that a wrong occurred, it does suffice to say that the plaintiff's liability, if any, to the decedent and her five children could only arise by virtue of some affirmative negligence in the operation of her motor vehicle. In fact, the complaints in the underlying actions seek recovery on that basis.

However, as stated in *General Electric Co.* v. *State of Cal.* ex rel. *Dept. Pub. Wks., supra,* at pages 922-923: "Other cases decline to follow too closely the 'active and affirmative participation' test of *Atchison T. & S. F. Ry. Co.* v. *Lan Franco, supra,* 267 Cal.App.2d 881. They emphasize a 'primary and secondary liability' test under which a party secondarily liable may have indemnity from a joint tortfeasor whose liability is primary. Discussing this rule, the court in *Ford Motor Co.* v. *Robert J. Poeschl, Inc.,* 21 Cal.App.3d 694, 696-697 [98 Cal.Rptr. 702], said:

" 'As a rough rule of thumb, the decisions allowing indemnity speak of the "passive" fault of the claimant as compared with the "active" fault of the indemnitor. Standing alone, the passive-active fault criterion is too vague to serve as a decisional guide. The standard most frequently applied by the California appellate courts is one drawn from an opinion of the Pennsylvania Supreme Court in *Builders Supply Co.* v. *McCabe,* 366 Pa. 322, 325-326 [77 A.2d 368, 24 A.L.R.2d 319]: "The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. . . . The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence,—a doctrine which, indeed, is not recognized by the common law. . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured

person. . . . But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." ' [Citations.]"

"It will be noted that even under this latter rule, 'the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is *imputed or constructive* only, . . . (Italics added; *Ford Motor Co.* v. *Robert J. Poeschl, Inc., supra,* 21 Cal.App.3d 694, 697.)"

In the case before us, the plaintiff has not pleaded that her liability is either constructive or imputed by or through any act of the state. For purposes of this appeal, the complaints establish two points only: first, that the plaintiff was not negligent, and, second, that the state was. If plaintiff was not negligent, then she is not liable to the survivors of Mrs. Leferriere, hence the question of indemnity would not arise, since indemnity presupposes liability. Further, there is no allegation in her complaint to the effect that some relationship existed between plaintiff and the state which would render the plaintiff liable by operation of law for the state's negligence, notwithstanding a lack of wrongful conduct by the plaintiff. It follows that plaintiff could be held liable only by reason of her own fault, which bars recovery under any theory of implied indemnity. This is in fact what the court's rulings on demurrers settled upon as the fatal defect in the complaint.

No amendment having been attempted and the rulings on demurrers having properly been made, the judgments of dismissal are affirmed and the purported appeals from the orders of dismissal are dismissed.

Taylor, P. J., and Kane, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 1, 1975.