[No. B108515. Second Dist., Div. One. June 8, 1998.]

EXXESS ELECTRONIXX et al., Cross-complainants and Appellants, v. HEGER REALTY CORPORATION et al., Cross-defendants and Respondents.

**COUNSEL**

Ashouri & Associates, P. Patrick Ashouri and Michael F. Frank for Cross-complainants and Appellants.

Greenberg & Creyaufmiller, Lawrence R. Greenberg and Timothy P. Creyaufmiller for Cross-defendants and Respondents.

## OPINION

**MASTERSON, J.**—After entering into a standard commercial lease, the lessee discovered several defects in the premises that interfered with its use of the property to conduct business. The lessee sued its broker for declaratory relief, constructive fraud, breach of fiduciary duty, and equitable relief, alleging that the broker should have disclosed the defects before the lease was executed. Eventually, the action was settled and dismissed.

The broker then moved for attorneys' fees pursuant to a provision in the lease which provided that "[i]f any Party or Broker brings an action or proceeding to enforce the terms hereof or declare rights hereunder, the Prevailing Party . . . or Broker . . . shall be entitled to reasonable attorney's fees." The trial court awarded fees to the broker. The lessee has appealed the award.

We conclude that Civil Code section 1717 precludes an award of attorneys' fees on the contract claim (declaratory relief) and that the contractual attorneys' fee provision does not authorize an award of fees on the tort claims (constructive fraud and breach of fiduciary duty) or the claims for equitable relief. Accordingly, we reverse.

### BACKGROUND[1]

Masco Building Products Corporation owns a three-story building in South Gate. In 1994, Exxess Electronixx, a partnership, commenced negotiations with Masco to lease a portion of the building for the purpose of operating a business. Heger Realty Corporation acted as the broker for both parties. In July 1994, Exxess and Masco executed a "Standard Industrial/ Commercial Single-Tenant Lease," a form lease prepared by the American Industrial Real Estate Association. The lease term was five years, beginning July 1, 1994. The lease acknowledged that Heger Realty was a dual agent for the lessor and lessee and required the lessor to pay a fee to Heger Realty in accordance with a separate written agreement. The lease did not describe any of Heger Realty's obligations or duties.

Paragraph 31 of the lease provided: "If any Party or Broker brings an action or proceeding to enforce the terms hereof or declare rights hereunder,

---

[1]Because the action was dismissed before trial. we rely on the pleadings in stating the "facts" of the case. For purposes of appeal, we will assume that the allegations are true.

the Prevailing Party (as hereafter defined) or Broker in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorney's fees. . . . The term '**Prevailing Party**' shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. . . ." (Boldface in original.)

Exxess and Masco also executed an addendum to the lease. It provided in part that "[e]lectrical service will be separately metered to Lessee's Premises, and Lessee shall be responsible for procuring, maintaining, and paying all charges and taxes in connection therewith." Further, Masco agreed that within the first 30 days of the lease, it would make certain improvements to the premises (e.g., install a fire escape door, erect a fence in the yard, and repair the building's sprinkler system). With the exception of those improvements and Masco's obligation to remediate any hazardous substances, Exxess "acknowledge[d] that Lessee is leasing the Premises . . . in its present '**As Is**' and '**With All Faults**' condition . . . . Lessee further acknowledges that by its entering into this Lease it has made such legal, factual, and other inquiries and investigations as it deems necessary, desirable, or appropriate with respect to the Premises and the value thereof and the appurtenances, facilities, and equipment thereof and that in entering into this Lease, it will be relying solely thereon." (Boldface and capitals in original.)

In 1995, a dispute arose between Exxess and Masco regarding payment of the electric bill. In November 1995, Masco filed this action against Exxess for breach of contract, alleging that Exxess had not paid the electric bill as required by the lease.[2] In December 1995, Exxess answered the complaint, denying all allegations. Exxess also filed a cross-complaint against Masco and Heger Realty.[3] The cross-complaint included claims of negligent and intentional misrepresentation against all cross-defendants. It also alleged claims for contribution and equitable indemnity against Heger Realty based on Exxess's potential liability to Masco.

In January 1996, Masco dismissed its complaint against Exxess. Proceedings continued on Exxess's cross-complaint against Masco and Heger Realty. Masco filed an answer to the cross-complaint, denying all allegations. Heger Realty filed a demurrer to the cross-complaint. By order dated March

---

[2]The two general partners of Exxess were also named as defendants. For convenience, we will refer to all three defendants as "Exxess."

[3]Also named as cross-defendants were two individuals employed by Heger Realty. For convenience, we will refer to these cross-defendants as "Heger Realty."

22, 1996, the trial court sustained the demurrer in part and overruled it in part. The trial court sustained the demurrer without leave to amend as to the claims against Heger Realty for intentional misrepresentation, contribution, and equitable indemnity.[4] The demurrer was sustained with leave to amend as to the negligent misrepresentation claim.

In April 1996. Exxess filed a first amended cross-complaint. Exxess alleged a breach of contract claim and related tort claims against Masco for failing to perform various obligations under the lease. Against Heger Realty, Exxess alleged three causes of action. First, in a claim for constructive fraud. Exxess alleged that Heger Realty was a fiduciary and had failed to disclose certain defects in the premises, including violations of the building code, the unfitness of the premises for occupancy, and the inability of the premises to qualify for a business license from the City of South Gate. Heger Realty allegedly withheld information about the defects in order to induce Exxess to lease the property. Had Exxess known the truth, it would not have entered into the lease.[5] Second, in a claim for declaratory relief, Exxess requested that the court determine the rights and duties of the parties under the lease.[6] Finally, in a claim for breach of fiduciary duty, Exxess alleged that it had an oral or written representation agreement with Heger Realty, that Heger Realty was a fiduciary, and that Heger Realty had breached its fiduciary duty by failing to disclose defects in the premises. Exxess sought compensatory and punitive damages on the claims for constructive fraud and breach of fiduciary duty.[7]

Heger Realty filed an answer to the first amended cross-complaint. The parties engaged in discovery. On October 21, 1996, approximately one month before trial, the case settled. Masco agreed to pay Exxess a fixed sum within 30 days, and, in return, Exxess agreed to pay for certain maintenance costs. As to Heger Realty, Exxess agreed to dismiss the cross-complaint with prejudice in exchange for Heger Realty's waiver of any claim for malicious prosecution. Heger Realty was not required to pay anything to Exxess. As part of the settlement, Heger Realty retained the right to move for costs and attorneys' fees in the action. On October 22, 1996, Exxess dismissed the cross-complaint with prejudice.

[4]The trial court concluded that the intentional misrepresentation claim was duplicative of the constructive fraud claim. The claims for contribution and indemnity were moot because Masco had dismissed its complaint against Exxess.

[5]We note that the constructive fraud claim is essentially one for fraud in the inducement. (See 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 392-405, pp. 356-365 [discussing types of fraud].)

[6]Exxess alleged that it and Masco were "direct parties" to the lease and that Heger Realty claimed to be a third party beneficiary under the lease.

[7]As stated, the trial court sustained Heger Realty's demurrer with leave to amend as to the negligent misrepresentation claim in the original cross-complaint. Nevertheless. Exxess did not replead that claim against Heger Realty in the amended cross-complaint.

On November 1, 1996, Heger Realty filed a cost memorandum listing $31,475.50 in attorneys' fees and $246.25 in other costs. Exxess responded with a motion to tax costs, challenging Heger Realty's right to attorneys' fees. In its opposition to the motion, Heger Realty argued that it was entitled to fees pursuant to the attorneys' fee provision in the lease. The trial court agreed with Heger Realty and denied Exxess's motion.

On November 20, 1996, Heger Realty filed a motion for attorneys' fees. Exxess filed papers in opposition. By order dated December 23, 1996, the trial court granted the motion and awarded Heger Realty $36,421.50 in attorneys' fees.[8] Exxess timely appealed from the trial court's orders denying its motion to tax costs and granting Heger Realty's motion for attorneys' fees.

## DISCUSSION

█  In determining whether Heger Realty is entitled to attorneys' fees, we examine the applicable statutes and provisions of the lease. Extrinsic evidence has not been offered to interpret the lease, and the facts are not in dispute. We therefore review the trial court's decision de novo. (See *Californians for Population Stabilization* v. *Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 294 [67 Cal.Rptr.2d 621]; *Snyder* v. *Marcus & Millichap* (1996) 46 Cal.App.4th 1099, 1102 [54 Cal.Rptr.2d 268]; *Hambrecht & Quist Venture Partners* v. *American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1539, fn. 4 [46 Cal.Rptr.2d 33].) █  We conclude that the trial court erred in awarding attorneys' fees to Heger Realty.[9]

### A.  Timeliness of the Motion

█  Exxess contends that the trial court erred in awarding attorneys' fees because Heger Realty did not file its motion for attorneys' fees in a timely manner. According to Exxess, the motion had to be filed before or at the same time Heger Realty filed its cost memorandum. Heger Realty missed that alleged deadline, having filed its motion almost three weeks after the cost memorandum was filed. Admittedly, there is case authority supporting Exxess's contention. (See *Russell* v. *Trans Pacific Group* (1993) 19

[8]The fee amount listed on the cost memorandum was lower than the actual award because the memorandum did not include the fees subsequently incurred by Heger Realty in opposing Exxess's motion to tax costs and in bringing the motion for attorneys' fees.

[9]Some Courts of Appeal have reviewed the awarding of attorneys' fees for an abuse of discretion. (See, e.g., *Reveles* v. *Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1153 [67 Cal.Rptr.2d 543]; *Mustachio* v. *Great Western Bank* (1996) 48 Cal.App.4th 1145, 1150 [56 Cal.Rptr.2d 33].) In this case, we would come to the same conclusions regardless of the standard of review.

Cal.App.4th 1717, 1723-1725 [24 Cal.Rptr.2d 274]; *Nazemi* v. *Tseng* (1992) 5 Cal.App.4th 1633, 1637-1638 [7 Cal.Rptr.2d 762].) However, those cases were decided under former rule 870.2 of the California Rules of Court, which stated that "[a]ny notice of motion to claim attorney fees as an element of costs under Civil Code section 1717 shall be served and filed before or at the same time the memorandum of costs is served or filed." (See *Russell* v. *Trans Pacific Group, supra*, 19 Cal.App.4th at p. 1720, fn. 7; *Nazemi* v. *Tseng, supra*, 5 Cal.App.4th at p. 1641.)

Effective January 1, 1994, a new rule 870.2 was adopted, which provides that "[a] notice of motion to claim attorney fees for services up to and including the rendition of judgment in the trial court shall be served and filed within the time for filing a notice of appeal under rules 2 and 3." (Cal. Rules of Court, rule 870.2(b).) Arguably, because Exxess's cross-complaint was resolved by way of a settlement and dismissal. rule 870.2 did not establish any deadline for filing the motion for attorneys' fees; there was no appealable order or judgment. (See *In re Tomi C.* (1990) 218 Cal.App.3d 694, 698 [267 Cal.Rptr. 210].) In any event, assuming that rule 870.2 provides guidance on the subject, the earliest possible deadline for filing the motion would have been 60 days after the dismissal was entered on October 22, 1996. (See Cal. Rules of Court, rule 2(a); Code Civ. Proc., §§ 12, 12a.) Because the motion was filed on November 20, 1996, it was timely.

B. *Attorneys' Fees Awarded Pursuant to Contract*

Civil Code section 1717, subdivision (a), provides: "In any action *on a contract*, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Italics added.)

1. *Contract Claim*

If a cause of action is "on a contract," and the contract provides that the prevailing party shall recover attorneys' fees incurred to enforce the contract, then attorneys' fees must be awarded on the contract claim in accordance with Civil Code section 1717. (*Santisas* v. *Goodin* (1998) 17

Cal.4th 599, 615-617 [71 Cal.Rptr.2d 830, 951 P.2d 399].)[10] ■ In its claim for declaratory relief, Exxess requested that the trial court determine the parties' rights and duties under the lease. Such a claim is "on a contract" for purposes of section 1717. (See *City and County of San Francisco* v. *Union Pacific R.R. Co.* (1996) 50 Cal.App.4th 987, 999-1000 [58 Cal.Rptr.2d 1]; *Las Palmas Associates* v. *Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1259 [1 Cal.Rptr.2d 301].) Accordingly, section 1717 governs whether attorneys' fees can be awarded on the claim for declaratory relief.

Civil Code section 1717, subdivision (b)(2), states that "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section." Consequently, an award of attorneys' fees is not permitted where an action "on a contract" has been dismissed as part of a settlement. (See *Santisas* v. *Goodin*, *supra*, 17 Cal.4th at p. 617.) Moreover, in those circumstances, Civil Code section 1717 cannot be circumvented by seeking fees under the general cost provisions of the Code of Civil Procedure (Code Civ. Proc., §§ 1032-1033.5) or under section 1021 of the Code of Civil Procedure. (*Santisas* v. *Goodin*, *supra*, 17 Cal.4th at pp. 606-607 & fn. 4; *id.* at pp. 623-624 (conc. opn. of Mosk, J.).)[11] Because Exxess dismissed the cross-complaint pursuant to a settlement, Heger Realty cannot recover attorneys' fees on the claim for declaratory relief.

We realize that the lease defined "prevailing party" to include "a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, *whether by compromise, settlement,* judgment, or the abandonment by the other Party or Broker of its claim or defense. . . ." (Italics added.) Thus, the lease contemplated an award of attorneys' fees to a cross-defendant who is dismissed as a result of a settlement. ■ Nevertheless, the definition of "prevailing party" in Civil Code section 1717 is mandatory and cannot be altered or avoided by contract. (*Santisas* v. *Goodin*, *supra*, 17 Cal.4th at pp. 615-617.) Contractual provisions that conflict with the "prevailing party" definition under section 1717 are void. (17 Cal.4th at p. 617.) ■ In

---

[10]There is no dispute that the language of the lease brings it within the reach of Civil Code section 1717.

[11]The general cost provisions define "prevailing party" to include "a defendant in whose favor a dismissal is entered." (Code Civ. Proc., § 1032, subd. (a)(4).) Section 1021 of the Code of Civil Procedure provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."

sum, despite the language of the lease, no attorneys' fees can be awarded with respect to the claim for declaratory relief.[12]

## 2. *Tort Claims*

■ Civil Code section 1717 does not apply to tort claims; it determines which party, if any, is entitled to attorneys' fees on a *contract claim only*. (*Santisas* v. *Goodin, supra*, 17 Cal.4th at pp. 615, 617, 619; *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 129 [158 Cal.Rptr. 1, 599 P.2d 83].) As to tort claims, the question of whether to award attorneys' fees turns on the language of the contractual attorneys' fee provision, i.e., whether the party seeking fees has "prevailed" within the meaning of the provision and whether the type of claim is within the scope of the provision. (*Santisas* v. *Goodin, supra*, 17 Cal.4th at pp. 602, 608-609, 617, 619.) This distinction between contract and tort claims flows from the fact that a tort claim is not "on a contract" and is therefore outside the ambit of section 1717. (*Stout* v. *Turney* (1978) 22 Cal.3d 718, 730 [150 Cal.Rptr. 637, 586 P.2d 1228]; *Childers* v. *Edwards* (1996) 48 Cal.App.4th 1544, 1548 [56 Cal.Rptr.2d 328].)

■ In this case, Exxess's claims for constructive fraud and breach of fiduciary duty sound in tort. (See *Tyler* v. *Children's Home Society* (1994) 29 Cal.App.4th 511, 548-549 [35 Cal.Rptr.2d 291] [constructive fraud]; *Estate of Gump* (1991) 1 Cal.App.4th 582, 601 [2 Cal.Rptr.2d 269] [constructive fraud]; *Moallem* v. *Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827 [31 Cal.Rptr.2d 253] [fiduciary duty]; *Jahn* v. *Brickey* (1985) 168 Cal.App.3d 399, 406 [214 Cal.Rptr. 119] [fiduciary duty].) Consequently, the question of whether Heger Realty is entitled to attorneys' fees on those claims is governed by the language of the fee provision in the lease. (See *Santisas* v. *Goodin, supra*, 17 Cal.4th at pp. 602, 608-609, 617, 619.)

■ "If a contractual attorney fee provision is phrased broadly enough, . . . it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims: '[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.' " (*Santisas* v. *Goodin, supra*, 17 Cal.4th at p. 608.) Here, the lease provided for an award of attorneys' fees to the prevailing party "[i]f any Party or Broker brings an action or proceeding to enforce the terms

---

[12]Section 1161.1, subdivision (a) of the Code of Civil Procedure addresses the determination of the "prevailing party" in an unlawful detainer action where the tenant has defaulted in the payment of rent under a commercial lease. Because the parties do not contend that this statute is applicable, we do not discuss its effect, if any, on the "prevailing party" definition in the lease before us.

hereof or declare rights hereunder." █ Accordingly, we must decide whether the claims for constructive fraud and breach of fiduciary duty were brought by Exxess either to "enforce the terms" of the lease or to "declare rights []under" the lease.

█ "To answer this question, we apply the ordinary rules of contract interpretation. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. . . . Such intent is to be inferred, if possible, solely from the written provisions of the contract. . . . The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" . . . . controls judicial interpretation. . . . Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. . . .'" (*Santisas* v. *Goodin*, *supra*, 17 Cal.4th at p. 608, citations omitted.)

### a. *Action to Enforce the Terms of the Lease*

. █ We conclude that Exxess's claims for constructive fraud and breach of fiduciary duty were not brought to "enforce the terms" of the lease. Civil Code section 1717, subdivision (a), makes clear that a tort claim does not "enforce" a contract. That statute expressly refers to, and therefore governs, "attorney's fees . . . which are incurred to enforce th[e] contract." Because section 1717 does not encompass tort claims (*Santisas* v. *Goodin*, *supra*, 17 Cal.4th at pp. 615, 617, 619; *Reynolds Metals Co.* v. *Alperson*, *supra*, 25 Cal.3d at p. 129), it follows that tort claims do not "enforce" a contract.

As our Supreme Court has indicated, where a lease authorizes an award of attorneys' fees in an action to " ' "enforce any . . . provision . . . of this [contract]," ' " tort claims are not covered. (*Santisas* v. *Goodin*, *supra*, 17 Cal.4th at p. 622, fn. 9.) Other decisions are in accord. (See, e.g., *McKenzie* v. *Kaiser-Aetna* (1976) 55 Cal.App.3d 84, 89 [127 Cal.Rptr. 275] [". . . an action for negligent misrepresentation is not an action to enforce the provisions of a contract"]; *DeMirjian* v. *Ideal Heating Corp.* (1949) 91 Cal.App.2d 905, 909-910 [206 P.2d 20] [lease authorizing award of attorneys' fees in an action " 'to enforce Lessor's rights hereunder' " does not include tort claims]; *Xuereb* v. *Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342-1343 [5 Cal.Rptr.2d 154] [attorneys' fees not permitted on tort claims under contractual provision authorizing fees in an action to interpret or enforce the contract].)

In short, the award of attorneys' fees cannot be sustained on the theory that the tort claims were brought to "enforce the terms" of the lease.

### b. *Action to Declare Rights Under the Lease*

Although Exxess's tort claims did not "enforce the terms" of the lease, our inquiry is not at an end. The lease also authorizes attorneys' fees in an action to "declare rights hereunder." For several reasons, we conclude that the tort claims do not fall within this second category.

First, we observe that the few reported decisions applying the attorneys' fee provision in a standard industrial/commercial lease have all involved contract claims. In *Roth* v. *Morton's Chefs Services, Inc.* (1985) 173 Cal.App.3d 380 [218 Cal.Rptr. 684], the lessor prevailed in an unlawful detainer action where the lessee had breached the lease by entering into a sublease without the lessor's consent. (*Id.* at pp. 385, 387, 389; see *Fragomeno* v. *Insurance Co. of the West* (1989) 207 Cal.App.3d 822, 828-831 [255 Cal.Rptr. 111] [unlawful detainer action based on breach of lease sounds in contract].) Similarly, in *Chapman and Cole* v. *Itel Container Intern. B.V.* (S.D.Tex. 1987) 665 F.Supp. 1283, affirmed (5th Cir. 1989) 865 F.2d 676, the lessee was found liable under the lease for failing to pay rent and not maintaining the premises. (665 F.Supp. at pp. 1287, 1290, 1291, 1295.) In *Dorman* v. *DWLC Corp.* (1995) 35 Cal.App.4th 1808 [42 Cal.Rptr.2d 459], the court assumed that attorneys' fees could be awarded to the lessor where the lessee had damaged the premises. (*Id.* at pp. 1811-1813 & fn. 4.) Although these cases do not hold that the attorneys' fee provision in a standard industrial/commercial lease excludes tort claims, neither do they suggest that claims of constructive fraud and breach of fiduciary duty fall within the scope of the provision.

Second, the contractual phrase "declare rights hereunder" is substantially similar to the language used in the declaratory relief statute, which permits a person to obtain a judicial declaration of his rights under a contract.[13] "A complaint for declaratory relief . . . sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court." (*Maguire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062]; accord, *Rubin* v. *Toberman* (1964) 226 Cal.App.2d 319, 325 [38 Cal.Rptr. 32].) Plainly, a declaratory

---

[13]The declaratory relief statute provides: "Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. . . ." (Code Civ. Proc., § 1060.)

relief action that seeks to establish the parties' rights under a contract is an action sounding in contract. (See *City and County of San Francisco* v. *Union Pacific R.R. Co.*, *supra*, 50 Cal.App.4th at pp. 999-1000; *Las Palmas Associates* v. *Las Palmas Center Associates*, *supra*, 235 Cal.App.3d at p. 1259.) Consequently, the similarity between the attorneys' fee provision and the declaratory relief statute suggests that the lease does not authorize fees on a tort claim.

Third, Exxess's tort claims are premised on a duty—specifically, a duty to disclose defects in the premises—that was not created by the lease. As stated, the lease did not set forth any obligations or duties of Heger Realty. ▪ It is well settled that while a contract action protects a party's interest in having promises performed, "[a] tort action . . . redresses the breach of the general duty to society which the law imposes without regard to the substance of the contractual obligation." (*Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1393 [272 Cal.Rptr. 387].)

▪ Moreover, the duty to disclose defects in the premises arose before the lease even existed. "An action premised on fraud in the inducement seeks to avoid the contract rather than to enforce it; the essential claim is 'I would not have entered into this contract had I known the truth.' The duty not to commit such fraud is *precontractual*[;] it is not an obligation undertaken by the entry into the contractual relationship." (*Perry* v. *Robertson* (1988) 201 Cal.App.3d 333, 343 [247 Cal.Rptr. 74], italics added.) Similarly, a real estate broker's fiduciary duty to disclose material facts about the property arises upon the creation of the principal-broker relationship, i.e., before the lease or purchase contract is created. (See *Padgett* v. *Phariss* (1997) 54 Cal.App.4th 1270, 1279-1286 [63 Cal.Rptr.2d 373]; *Salahutdin* v. *Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 561-563 [29 Cal.Rptr.2d 463].) ▪ Simply put, Exxess's tort claims were premised on a duty that arose without regard to the terms of the lease and before the lease existed. It follows that Exxess's pursuit of the tort claims did not seek to "declare rights []under" the lease.[14]

Finally, Heger Realty argues that it is entitled to fees because its *defense* to the cross-complaint was based on a provision of the lease, in particular, the "as is" clause. According to Heger Realty, all of Exxess's claims were

---

[14]We express no opinion on the ability of a broker to recover attorneys' fees under a contract between it and its client (e.g., listing agreement, brokerage agreement). Here, the pertinent contract is a lease between Masco, as lessor, and Exxess, as lessee. Although the attorneys' fee provision includes the broker, Heger Realty was not a signatory to the lease, and the lease did not describe any "rights" of Masco or Exxess as against Heger Realty.

meritless because Exxess had expressly agreed in the lease to take the property "as is" and "with all faults" and had further agreed to rely solely on its own investigation of the property. The "as is" clause, so the argument goes, negated any duty on Heger Realty's part to disclose defects in the property. (See *Shapiro* v. *Hu* (1986) 188 Cal.App.3d 324, 332-334 [233 Cal.Rptr. 470] [discussing effect of "as is" clause on sellers' liability to purchasers for failing to disclose defect in premises].)

Leaving aside the merits of the "as is" defense, the question remains whether it comes within the attorneys' fee provision of the lease. Assuming that Heger Realty is the prevailing party in the case, the lease authorizes attorneys' fees "[i]f any Party or Broker *brings an action or proceeding* to enforce the terms hereof or declare rights hereunder." (Italics added.) While the "as is" defense may have had the effect of "enforc[ing] the terms" of the lease or "declar[ing] rights [there]under," Heger Realty did not "bring[] an action or proceeding" to accomplish those goals. Under any reasonable interpretation of the attorneys' fee provision, we cannot equate raising a "defense" with bringing an "action" or "proceeding."[15] By asserting a defense to the cross-complaint, Heger Realty did not bring an action or proceeding to enforce the lease or to declare rights under it.

Although we sympathize with Heger Realty's position,[16] we cannot re-write the attorneys' fee provision in the lease. We note, however, that the provision before us appears to be quite narrow. In that regard, courts have interpreted broader provisions to permit an award of attorneys' fees on a tort claim. (See, e.g., *Santisas* v. *Goodin*, *supra*, 17 Cal.4th at p. 607 [provision authorizing fees " '[i]n the event legal action is instituted by the Broker(s),

---

[15]An "action" is "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law[;] . . . [a]n ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Black's Law Dict. (6th ed. 1990) p. 28, col. 1; accord, Code Civ. Proc., §§ 20-22.) "A 'proceeding' includes action and special proceedings before judicial tribunals as well as proceedings pending before quasi-judicial officers and boards." (Black's Law Dict., *supra*, p. 1204, col. 1.) "The word ['proceeding'] may be used synonymously with 'action' or 'suit' to describe the entire course of an action at law or suit in equity from the . . . filing of the complaint until the entry of final judgment . . . ." (*Ibid.*; see also Code Civ. Proc., §§ 20-23.) In contrast, a "defense" is "[t]hat which is offered and alleged by the party *proceeded against in an action or suit*, as a reason in law or fact why the plaintiff should not recover or establish what he seeks[; . . . [¶] it is a] *response to the claims* of the other party, setting forth reasons why the claims should not be granted." (Black's Law Dict., *supra*, p. 419, col. 2, italics added.)

[16]During the litigation, Heger Realty repeatedly informed Exxess that the cross-complaint was frivolous. Moreover, the terms of the settlement were very favorable to Heger Realty: The cross-complaint was dismissed with prejudice in exchange for Heger Realty's waiver of any malicious prosecution claim; no money was paid; and Heger Realty reserved the right to seek attorneys' fees.

or any party to this agreement, or arising out of the execution of this agreement or the sale [of the property], or to collect commissions' "]; *Allstate Ins. Co.* v. *Loo* (1996) 46 Cal.App.4th 1794, 1799 [54 Cal.Rptr.2d 541] [provision authorizing fees " '[i]n any legal action brought by either party to enforce the terms hereof or relating to the demised premises' "]; *Moallem* v. *Coldwell Banker Com. Group, Inc.*, *supra*, 25 Cal.App.4th at p. 1831 [provision authorizing fees in "any 'legal action . . . relating to' the contract"]; *Xuereb* v. *Marcus & Millichap, Inc.*, *supra*, 3 Cal.App.4th at p. 1342 [provision authorizing fees "in any 'lawsuit or other legal proceeding' to which 'this Agreement gives rise' "]; see also *Share* v. *Casiano Bel-Air Homeowners Assn.* (1989) 215 Cal.App.3d 515, 521 [263 Cal.Rptr. 753] [provision authorizing fees " '[i]n the event any party to this Agreement brings suit to enforce any provision of this Agreement, or is required to defend any action the defense of which is any provision of this Agreement' "].)[17]

In sum, because Exxess's tort claims did not enforce the terms of the lease or declare rights under the lease, Heger Realty cannot recover attorneys' fees on those claims.[18]

### 3. *Other Noncontract Claims*

■ "If an action asserts both contract and tort *or other noncontract* claims, [Civil Code] section 1717 applies only to attorney fees incurred to litigate the contract claims." (*Santisas* v. *Goodin, supra*, 17 Cal.4th at p. 615, italics added.) As with tort claims, the question of whether to award fees on other noncontract claims depends upon the scope of the contractual attorneys' fee provision. (*Id.* at p. 602.)

■ The trial court sustained Heger Realty's demurrer without leave to amend as to Exxess's claims for contribution and equitable indemnity.

---

[17]Among secondary authorities, one recommends that contracting parties use an attorneys' fee clause virtually identical to the provision in this case. (See Greenwald & Asimow., Cal. Practice Guide: Real Property Transactions 1 (The Rutter Group 1998) form 4:H, Purchase and Sale Agreement and Joint Escrow Instructions p. 4-193 (rev. #1, 1998) [suggesting provision in purchase and sale agreement awarding fees "[i]f either party named herein brings an action or proceeding to enforce the terms hereof or declare rights hereunder"].) Another authority recommends a broader clause. (See Commercial Real Property Lease Form (Cont.Ed.Bar Supp. 1990) § 3.160, p. 104 [suggesting provision in commercial lease awarding fees "[i]f either party commences an action against the other party arising out of or in connection with this lease"].)

[18]Our analysis of Exxess's claims for constructive fraud and breach of fiduciary duty would also apply to its claims for negligent and intentional misrepresentation, which appeared in the original cross-complaint and were dismissed as a result of Heger Realty's demurrer. (See *Bily* v. *Arthur Young & Co.* (1992) 3 Cal.4th 370, 407, 414-415 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835] [negligent and intentional misrepresentation claims sound in tort].)

Assuming that Heger Realty is the prevailing party in the case, we must determine whether those claims are covered by the attorneys' fee provision in the lease. We begin by examining the nature of contribution and equitable indemnity in general.[19]

■ "In California, as in most other American jurisdictions, the allocation of damages among multiple tortfeasors has historically been analyzed in terms of two, ostensibly mutually exclusive, doctrines: contribution and indemnification. In traditional terms, the apportionment of loss between multiple tortfeasors has been thought to present a question of contribution; indemnity, by contrast, has traditionally been viewed as concerned solely with whether a loss should be entirely shifted from one tortfeasor to another, rather than whether the loss should be shared between the two. . . . [T]he dichotomy between the two concepts is more formalistic than substantive, and the common goal of both doctrines[ is] the equitable distribution of loss among multiple tortfeasors . . . ." (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 591 [146 Cal.Rptr. 182, 578 P.2d 899], citations and fn. omitted; accord, *Coca-Cola Bottling Co. v. Lucky Stores, Inc.* (1992) 11 Cal.App.4th 1372, 1378 [14 Cal.Rptr.2d 673].)[20]

The right to contribution or indemnity is rooted in principles of equity. "In the absence of a contractual provision for indemnity, the right of one party to seek indemnity or contribution from another has always been considered

[19]Because Exxess brought a claim for *equitable* indemnity, we do not discuss *express* indemnity. (See *Smoketree-Lake Murray, Ltd. v. Mills Concrete Construction Co.* (1991) 234 Cal.App.3d 1724, 1735-1737 [286 Cal.Rptr. 435] [addressing distinction between express and equitable indemnity].) Nor is it necessary in this case to distinguish between "implied contractual indemnity" (see *West v. Superior Court* (1994) 27 Cal.App.4th 1625, 1632-1633 [34 Cal.Rptr.2d 409]) and "implied noncontractual indemnity" (see *Taggart v. State of California* (1975) 45 Cal.App.3d 768, 770-771 [119 Cal.Rptr. 696]), since both doctrines are sufficiently similar for our purposes (see *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1029 & fn. 10 [269 Cal.Rptr. 720, 791 P.2d 290]). Also, we rely on contract and tort cases to the extent that contribution and indemnity are based on the same principles in both types of cases. (See 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, §§ 167-169, pp. 847-850; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 82-91, pp. 157-165; *Smoketree-Lake Murray, Ltd. v. Mills Concrete Construction Co., supra,* 234 Cal.App.3d at pp. 1736-1737.)

[20]In California, a right of contribution among joint *tortfeasors* did not exist at common law but was conferred by statute in 1957. (See *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 108, fn. 6 [32 Cal.Rptr.2d 263, 876 P.2d 1062]; *Coca-Cola Bottling Co. v. Lucky Stores, Inc., supra,* 11 Cal.App.4th at p. 1378, fn. 6; Stats. 1957, ch. 1700, § 1, pp. 3076-3077, codified as Code Civ. Proc., §§ 875-877, 878-880.) In contrast, as early as 1872, joint judgment debtors *on a contract claim* had a statutory right of contribution. (See Deering's Ann. Code Civ. Proc. (1959 ed.) § 709, p. 557; Stats. 1982, ch. 1364, § 1, p. 5070, repealing Code Civ. Proc., § 709; Stats. 1982, ch. 497, § 63, pp. 2164-2165, adding Code Civ. Proc., §§ 881-883; see also Cal. Law Revision Com. coms., Deering's Ann. Code Civ. Proc. (1996 ed.) §§ 882-883, pp. 381-382.)

equitable in origin. . . . Indeed, noncontractual indemnity and contribution have historically been 'based on equitable considerations of unjust enrichment and restitution.' " (*Miller* v. *American Honda Motor Co.* (1986) 184 Cal.App.3d 1014, 1019 [229 Cal.Rptr. 523], citations omitted.) As our Supreme Court has explained: " 'Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnify will be recognized in cases where community opinion would consider that in justice the responsibility should rest upon one rather than the other. This may be because of the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct.' " (*American Motorcycle Assn.* v. *Superior Court*, *supra*, 20 Cal.3d at p. 595, fn. 4; accord, *County of Lassen* v. *State of California* (1992) 4 Cal.App.4th 1151, 1154 [6 Cal.Rptr.2d 359].)

By way of example, where one judgment debtor seeks contribution from another in an action involving the breach of a promissory note, "[t]he right of contribution, although necessarily related to some former transaction or obligation, exists as an entirely separate contract implied by law. . . . [¶] . . . [The] claim for contribution thus arises solely from [a] right imposed by operation of law and principles of equity. Although technically related to the underlying obligation, [the] claim for contribution neither arises nor is contingent upon the promissory note . . . ." (*Borba Farms, Inc.* v. *Acheson* (1988) 197 Cal.App.3d 597, 602 [242 Cal.Rptr. 880].)

█ Consistent with the foregoing analysis, we conclude that Exxess's claims for contribution and indemnity do not fall within the scope of the attorneys' fee provision in the lease. Exxess's rights to contribution and indemnity, if any, were created solely by operation of law and principles of equity, not by the parties' underlying obligation (i.e., the lease). (See *Borba Farms, Inc.* v. *Acheson*, *supra*, 197 Cal.App.3d at p. 602.) Those rights "exist[ed] as an entirely separate contract implied by law" (*ibid.*); they did not arise from, nor were they contingent upon, the lease (see *ibid.*). It follows that Exxess's claims for contribution and indemnity did not "enforce the terms" of the lease or "declare rights []under" the lease.[21]

In conclusion, Civil Code section 1717 precludes an award of attorneys' fees on Exxess's declaratory relief claim, and the attorneys' fee provision in

---

[21]Heger Realty argues that it is entitled to attorneys' fees merely because Exxess requested them in its cross-complaint. We reject this argument for two reasons. First, an examination of each cause of action in the amended cross-complaint indicates that Exxess did not seek fees against Heger Realty. Instead, it sought them against Masco for allegedly breaching the lease. Second, the court in *Sweat* v. *Hollister* (1995) 37 Cal.App.4th 603 [43 Cal.Rptr.2d 399], disapproved on other grounds in *Santisas* v. *Goodin*, *supra*, 17 Cal.4th at page 609, footnote 5, thoroughly reviewed the case law on this point and concluded, as have the more recent cases, that "[t]he mere fact that a plaintiff alleges an entitlement to attorney fees does not create an entitlement to same by a prevailing defendant . . . ." (37 Cal.App.4th at p. 616.)

the lease does not encompass any of the other claims. The trial court therefore erred in granting Heger Realty's motion for attorneys' fees.

## DISPOSITION

The order denying Exxess Electronixx's motion to tax costs and the order awarding attorneys' fees to Heger Realty Corporation are reversed. Appellants are entitled to costs on appeal.

Spencer, P. J., and Ortega, J., concurred.